IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DESTINEE A.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 25 C 10318** |
| v. | ) | |
| | ) | **Magistrate Judge Gabriel A. Fuentes** |
| FRANK BISIGNANO, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**[2]

Before the Court is Plaintiff Destinee A.'s motion for summary judgment (D.E. 20) and brief in support of reversing and remanding the Commissioner's decision denying her application for Supplemental Security Income ("SSI") (D.E. 21, "Pl. Mem."), which is now fully briefed. *See* Defendant's Memorandum in Opposition (D.E. 24, "Opp."), and Plaintiff's Reply (D.E. 25).

## I.      Procedural History

Plaintiff applied for SSI on October 6, 2022, alleging a disability onset date of October 24, 2019. (R. 15.) After a hearing on August 8, 2024, the Administrative Law Judge ("ALJ") issued a written decision denying Plaintiff's application on August 30, 2024, finding that under the Social Security Act (the "Act"), Plaintiff has not been under a disability since her application date.[3] (R. 16.)

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] On September 19, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 11.)

[3] The Appeals Council subsequently denied review of the opinion (R. 1-3), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

## II.     The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date of October 6, 2022. (R. 17.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of generalized anxiety disorder and bipolar disorder. (*Id.*) At Step Three, the ALJ considered the "paragraph B" criteria of Listings 12.03, 12.04, and 12.011, and determined that Plaintiff's impairments alone or in combination did not meet or medically equal any Listing. (R. 18-19.) The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> The claimant can understand, remember, and carry out simple instructions. She is able to sustain the necessary attention and concentration in two-hour increments throughout the day to sustain simple job duties assuming typical workday breaks. She can make simple work-related decisions. She can occasionally interact with co-workers. She cannot work with the general public.

(R. 19.) At Step Four, the ALJ determined that Plaintiff is unable to perform any past relevant work, but that at Step Five, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 25-26.). Thus, the ALJ determined that Plaintiff was not disabled under the Act since the date the application was filed. (R. 26.)

## III.    Legal Standard

The Court "will reverse an ALJ's decision only if it is the result of an error of law or it is not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yokosh v. Bisignano*, 170 F.4th 631, 637 (7th Cir. 2026) (internal citations and quotations omitted). "In making these determinations, an ALJ is subject to only the most minimal of articulation requirements... Our role is extremely limited, and

2

we do not reweigh evidence, make credibility determinations, or substitute our judgment for the ALJ's determination." *Cain v. Bisignano*, 148 F.4th 490, 496-97 (7th Cir. 2025) (internal quotations omitted). An "ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Lincoln v. Bisignano*, 173 F.4th 886, 892 (7th Cir. 2026) (internal citations and quotations omitted). The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement as ALJs: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**IV.     Analysis: The ALJ Committed Legal Errors in Crafting Plaintiff's Mental RFC.**

On appeal, Plaintiff makes several arguments for remand, one of which is that the ALJ made an error of law in assessing Plaintiff's mental RFC. For the following reasons, the Court agrees that the ALJ committed legal error which necessitates remand.

**A.     The ALJ's Decision To Equate an RFC Limitation to "Simple" Tasks with a Limitation to "One- or Two-Step" Tasks Was Legal Error.**

The ALJ reviewed the state agency psychological consultants' opinions that Plaintiff was moderately limited in three of four paragraph B categories and quoted their opinions that Plaintiff "maintains the ability to carry out simple (one and two step tasks) in various setting[s]" and that her "[i]nteraction with others should be limited to brief/superficial." (R. 22-23, quoting R. 152.) The ALJ found these opinions "largely persuasive in that they restrict the claimant to unskilled work with social restrictions, which is supported by and consistent with the evidence of record," and the ALJ's review of the evidence supplied examples of their supportability and consistency. (R. 20-22.) Despite the consultants' specification that the simple work Plaintiff could perform was

limited to one- and two-step tasks, the ALJ gave the following reasons for declining to add a limitation to one- and two- step tasks to Plaintiff's RFC:

> It appears that DDS['] use of "1-2 step tasks" is shorthand for unskilled work as it is a vague term and is not consistent [with] any SSA regulation or policy. It is understood in this situation that "1-2 step tasks" refers to simple work instructions as part of the definition of unskilled work base... The basic demands of unskilled work "include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." ... Furthermore, the DOT provides a list of possible tasks but does not define a job in terms of the number of tasks. The SSA rules and regulations define work as the ability to follow instructions not the number of steps involved...

(R. 23, quoting Social Security Regulation ("SSR") 85-15: Titles II and XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments.)

Contrary to the ALJ's explanation, a limitation to one- and two-step tasks is a term of art in the Dictionary of Occupational Titles ("DOT"). The DOT uses this phrase to define the lowest "Reasoning Development Level" required for different occupations. To meet the vocational requirements for the lowest Reasoning Level 1 job, an individual must be able to "apply commonsense understanding to carry out simple one- or two-step instructions," and "deal with standardized situations with occasional or no variables in or from these situations encountered on the job." https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC ("DOT App'x C"). The Seventh Circuit has noted that "courts have concluded [] that a limitation to one- to two-step instructions disqualifies a claimant from occupations requiring this reasoning level [2]." *Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020). *See also Dustin S. v. O'Malley*, No. 21 C 5693, 2024 WL 4836233, at *2 (N.D. Ill. Nov. 20, 2024) (collecting cases from the Northern District of Illinois that "have repeatedly interpreted the restriction to 1-2 step tasks to limit a claimant to Level 1 Reasoning jobs").

4

The ALJ's determination that "simple" job duties and decisions can substitute for one- or two-step tasks in Plaintiff's RFC constitutes legal error because "a simple tasks limitations" can include jobs with Reasoning Development Level 2, and even 3.[4] *Surprise*, 968 F.3d at 663. The ALJ's hypothetical to the vocational expert ("VE") at Plaintiff's hearing matched the RFC the ALJ ultimately assigned to Plaintiff, using a limitation to simple tasks instead of one- or two-step tasks. (R. 59-61) Accordingly, the jobs which the VE testified Plaintiff could perform were each Reasoning Level 2 jobs: Cleaner II (919.687-014), Hand Packager (920.587-018), and Marker (209.587-034). (R. 26.) *See also* DOT, App'x C. An ALJ must "ensure the vocational expert was apprised fully of the claimant's limitations so the expert could offer a reliable opinion about jobs the claimant could perform." *Moy v. Bisignano*, 142 F.4th 546, 553 (7th Cir. 2025). The ALJ did not do so here, but nevertheless adopted the VE's analysis at Step Five, listing only the aforementioned Reasoning Level 2 jobs for Plaintiff to perform despite the state agency experts' specification that Plaintiff should be limited to jobs with one- and two-step tasks, which courts have found limit individuals to Reasoning Level 1 jobs. [5]

---

[4] Jobs with a Reasoning Development Level of 2 require an individual to have the capacity to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT App'x C. Jobs with a Reasoning Development Level of 3 require an individual to have the capacity to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

[5] The Commissioner argues that the ALJ's legal error was harmless because despite limiting Plaintiff to jobs with one- and two-step tasks, the state agency psychological consultants cited two potentially available occupations with Reasoning Development Level 2 (Cloth-Printer Helper, DOT 652.686-010, and Dipper and Baker, DOT 599.685-030). (Def. Resp. at 4, citing R. 152-83.) The Commissioner reads too much into the jobs noted on the psychological experts' RFC opinions. The Social Security regulations "consider state agency psychologists ... to be 'highly qualified and experts in Social Security disability evaluation,'" on whose opinions as to claimants' RFCs an ALJ may rely if they meet the consistency and supportability standards. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citing 20 C.F.R. § 404.1513a(b)(1)). But the state agency psychologists are not experts in the DOT. Rather, for the question of whether a significant number of jobs exist in the national economy for someone with a claimant's abilities and limitations, the ALJ turns to the testimony of VEs, who "rely on Department of Labor publications to calculate and predict

The ALJ's error of law was not harmless. "[T]he harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. An error is harmless if, upon examination of the record, the court can predict with great confidence what the result of remand will be." *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (internal citations and quotations omitted). Here, without any indication that the ALJ or the VE considered whether Plaintiff could perform Reasoning Level 2 jobs consistent with a limitation to one- or two-step tasks, the Court cannot predict with confidence whether, in the absence of the ALJ's legal error equating a limitation to simple tasks with a limitation to one- or two-step tasks, the ALJ would have assigned Plaintiff the same RFC and made the same Step Five determination. *See also James T. v. Kijakazi*, No. 20 C 4990, 2023 WL 8372039, at *3-4 (N.D. Ill. Dec. 1, 2023) (holding that the ALJ erred by failing to explain why she omitted a one- or two-step task limitation in her hypothetical to the VE or the RFC determination, where the ALJ otherwise adopted the state agency consultant opinion that included this limitation, and collecting district court cases that remanded on the same grounds). Thus, the ALJ's error requires remand here.

**B.    A Limitation to Brief or Superficial Interaction with Others Is Not Necessarily the Same as Occasional Contact with Coworkers.**

On remand, the ALJ should also explain why, instead of adopting the state agency psychological consultants' opinion that the claimant's "[i]nteraction with others should be limited to brief/superficial," the ALJ opined that she could "occasionally interact with co-workers" and never "work with the general public." (R. 19) While the Commissioner argues that the ALJ's opinion met the "minimal articulation" requirements, the ALJ never explained the distinction

---

the number of jobs in the national economy for any given occupation." *Cain v. Bisignano*, 148 F.4th 490, 500 (7th Cir. 2025).

between the language in the state agency opinions and the language in the RFC. Without any explanation as to the ALJ's reasoning, the Court cannot determine whether the ALJ adequately took into account Plaintiff's limitations in interacting with others.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion and memorandum in support of reversing and remanding the ALJ's decision (D.E. 20, 21) and denies Defendant's memorandum in support of affirming the decision (D.E. 24).

**SO ORDERED.**

       **ENTER:**

       **GABRIEL A. FUENTES**
       **United States Magistrate Judge**

**DATED:  June 9, 2026**